UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TALTECH LIMITED,<br><br>                    Plaintiff,<br><br>v.<br><br>ESQUEL ENTERPRISES LTD.,<br><br>                    Defendant. | No.  C04-974Z<br><br>ORDER |

This matter came before the Court on Esquel Enterprises Ltd.'s ("Esquel") Motion for Summary Judgment, docket no. 196.  The Court entered an Order on August 23, 2006, denying the motion as to the best mode requirement and deferring the motion as to non-infringement.  Order, docket no. 215.  After hearing oral argument of counsel on August 24, 2006, the Court entered a Minute Order on August 31, 2006, granting in part and denying in part the motion as to non-infringement.  This Order explains the Court's August 31, 2006 ruling on Esquel's motion for summary judgment of non-infringement.

**A.     Present Motion**

Esquel moved for summary judgment of non-infringement as to all claims asserted by Taltech Limited ("Taltech") (i.e., dependent claims 11, 12, 14 and 29 of Taltech's United States Patent No. 5,590,615 ("the '615 Patent") and dependent claims 18, 25, and 26 of

ORDER  1–

United States Patent No. 5,568,779 ("the '779 Patent") (collectively referred to as the "patents-in-suit").

**B.     Esquel's Seams**

Esquel manufactures the armhole seams of its wrinkle-free shirts in general accordance with Charts D, E, and F of the "Wrinkle Free Seam Taping Protocol for U.S. Market." Stolte Decl., docket no. 197, Ex. A (Zhang Decl.) at ¶ 2, and Ex. 1; see also Taltech's Opp'n, docket no. 203, at 5 (citing Charts E and F). Mr. Zhang, Esquel's Research and Development Director, explains Esquel's dress shirt armhole seam manufacturing operation:

> A sewing machine operator positions and feeds the sleeve horizontally along the bed of the sewing machine while simultaneously feeding the adhesive tape [i.e., the bonding element] in a vertical orientation to a folder which folds the tape around the edge of the sleeve in a U-shape. The tape is never laid flat onto the sleeve. . . . (¶ 4; see also ¶ 7, Chart D)
>
> In another operation performed by a different sewing machine operator on a different machine, a second U-shaped adhesive tape is sewn onto the edge of the front panel that will ultimately form part of an armhole seam. The tape is fed into the sewing machine vertically and enters a folder which folds the tape into a U-shape around the edge of the front panel. The tape is never laid flat on the front panel and there is no unfolded portion of the tape. . . . (¶ 5; see also ¶ 7, Chart D)
>
> In another operation performed by another sewing machine operator on a different machine, a third U-shaped tape is sewn onto the edge of the back panel that will ultimately form part of the armhole seam. The same vertical tape feeding and folding actions . . . occur with respect to the back panel. . . . (¶ 6; see also ¶ 7, Figure 1/Chart D)
>
> A yoke bridges the front and back panels and completes the shirt body. . . . In a significant portion of the wrinkle-free shirts that Esquel has manufactured for sale in the United States, Esquel does not sew any tape or adhesive material onto the armhole edges of the yoke. . . . (¶ 8; see also ¶ 11, Figure 4)
>
> In a later operation . . . [t]he sewing machine operator positions the shirt body formed by the front panels, back panel and yoke over the unfolded portion of the sleeve . . . [and] sews two rows of stitches affixing the sleeve to the shirt body. . . . (¶ 9; see also Figure 2/Chart E)
>
> Next, the shirt body is folded over the seam already formed such that the two rows of stitches previously sewn are covered and a top stitch is sewn.

ORDER  2–

> . . . (¶ 10; see also Figure 3 / Chart F)
>
> After the top stitch forming the seam has been sewn, the shirt is passed to an ironing press where heat and pressure are applied to the seams. During this operation, the U-shaped tapes melt . . . (¶ 12; see also Figures 5 and 6).

Stolte Decl., docket no. 197, Ex. A (Zhang Decl.).

Mr. Zhang elaborated about Esquel's use of a bonding element at the armhole edge of the yoke: "The only shirts that Esquel manufactures for sale in the United States that did feature a U-shaped adhesive tape affixed to the armhole edge of the yoke were sold (FOB Hong Kong) to Mast Industries (Far East) Ltd. of Hong Kong . . . in October 2004." Esquel's Reply, docket no. 209, Ex. J (Zhang Decl.) ¶ 4. "In all, the number of shirts with tape affixed to the armhole edge of the yoke that Esquel has sold for shipment to the United States market amount to 24,489 units." Id. ¶ 5; see also Taltech's Reply, docket no. 211, Appendix 4 (Email from S. Hoeft, August 4, 2006).

**C.      Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Anderson, 477 U.S. at 255.

**D.      Legal Standard for Infringement / Non-Infringement**

"An infringement analysis entails two steps." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). "The first step is determining the meaning and scope of the patent claims asserted to be infringed." Id. "The second step is comparing the properly construed claims to the device accused of infringing." Id. The first step of construing the patent claims "is a matter of law exclusively for the court." Id. at 977. On January 19, 2006, the Court construed thirteen claims in the patents-in-suit. Order, docket

ORDER 3–

no. 150 (the "Markman Order"). To the extent further claim construction is required at the summary judgment stage, "the district court has considerable latitude in determining when to resolve issues of claim construction." CytoLogix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1172 (Fed. Cir. 2005). "The second step, determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

To succeed on summary judgment, Esquel must show that Taltech's "proof is deficient in meeting an essential part of the legal standard for infringement." Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001). As a result, Esquel must demonstrate that Taltech's proof is deficient in demonstrating both literal infringement and infringement under the doctrine of equivalents. See Stiftung v. Renishaw PLC, 945 F.2d 1173, 1178 (Fed. Cir. 1991) ("Infringement of a claim requires that the accused device meet every limitation of the claim, either literally or by equivalents.").

Literal infringement requires that "the accused product or process meets every element or limitation of a claim." Rohm and Haas Co. v. Brotech Corp., 127 F.3d 1089, 1092 (Fed. Cir. 1997). "Where the parties do not dispute any relevant facts regarding the accused product, . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 983 (Fed. Cir. 1997).

Equivalence between an element in an accused product (or step in an accused method) and a claim limitation can be determined under either the triple-identity test – i.e., based upon an examination of "the function served by a particular claim element, the way that element serves that function, and the result thus obtained by that element" – or under the "insubstantial differences" test – i.e., by asking whether the differences between the elements/steps are "insubstantial" to one of ordinary skill in the art. See Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 39-40 (1997). In other words, "the role

ORDER 4–

played by each element in the context of the specific patent claim" must be analyzed to "inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." Id. at 40.

The claims asserted by Taltech are dependent claims. Because "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers," 35 U.S.C. § 112, paragraph 4, a product or method that does not include all of the claim limitations in an independent claim cannot infringe the claims dependent on that claim. See Robotic Vision Sys., Inc. v. View Eng'g, Inc., 189 F.3d 1370, 1376 (Fed. Cir. 1999); Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). Esquel contests that its method and shirts do not include all of the claim limitations in the independent claims of the patents-in-suit (i.e., Claims 1 and 19 of the '615 Patent, and Claims 1 and 20 of the '779 Patent), and therefore do not infringe the dependent claims asserted by Taltech.

**E.     Analysis of Esquel's Motion**

   **1.     Folded Bonding Elements**

First, Esquel argues that it does not infringe any of the asserted claims because Esquel's shirts and method use a folded bonding element. Esquel notes that the Court's Markman Order, at page 11, states that "the claims do not include any folding of the bonding element." Although this is an accurate quote, Esquel takes the statement out of context. The Court was not construing "a bonding element" when it made this statement; rather, the Court was explaining why it was rejecting Esquel's proposed construction for "upper surface" and "lower surface." Although the specifications of the patents-in-suit show an unfolded bonding element, the claims do not preclude the use of a folded bonding element. See Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1328 (Fed. Cir. 2002) (noting that the

ORDER  5–

Federal Circuit has "cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification."). As agreed to by Esquel at oral argument, the Court's construction of "a bonding element" to mean "one or more substances or constituents of a whole that bind, fasten, fuse, confine, or hold together" does not foreclose the use of a folded bonding element. See Markman Order at 24. Accordingly, the Court rejects Esquel's "folded bonding element" argument as a basis for summary judgment of non-infringement.

### 2. "Upper Surface" and "Lower Surface" Designations

Second, Esquel argues that it does not infringe any of the asserted claims because the U-shaped bonding elements in Esquel's armhole seams do not meet the "upper surface" and "lower surface" limitations in each independent claim of the patents-in-suit. Step (c) of claim 1 of the '615 Patent requires "providing a bonding element having an upper and lower surface . . . ." '615 Patent at 6:37-38; see also '615 Patent at 8:2-3 (independent claim 19 of the '615 Patent requires "a bonding element . . . having an upper and lower surface"); '779 Patent at 6:33-35 and 6:42-43 (independent claim 1 of the '779 Patent requires a bonding element with an upper and lower surface); '779 Patent at 8:8-9 (independent claim 20 of the '779 Patent requires "a bonding element . . . having an upper and lower surface").

The Court construed "upper surface" and "lower surface" as follows:

> "Upper surface" and "lower surface" are designated at the time the first set stitch is applied, and the upper and lower surfaces of a component/element are opposing surfaces through a thickness of the component/element, providing that the "upper surface" faces upward and the "lower surface" faces downward at the time of designation along the unfolded portions of the garment components, and providing that the upper surface and lower surface designations of the garment components remain consistent around folds required in the claim.

ORDER 6–

1  Markman Order at 11.[1]  The Court did not, and need not, address whether the upper and

2  lower surface designations must remain consistent around folds of a bonding element

3  because the claims do not require a folded bonding element.  The upper and lower surfaces

4  of a folded bonding element can be designated under the Court's construction so long as the

5  bonding element, at the time the first set stitch is applied, has horizontal aspects such that

6  one surface faces up and the opposing surface faces down.

7  Esquel's bonding elements, although folded, have horizontal aspects.  Esquel's expert,

8  Dr. Fred L. Cook, in describing Esquel's U-shaped tapes, discusses the "vertical and

9  horizontal planes of symmetry" and states that "the four planar 'wings' of the I-beam

10  projecting at 180 degrees away from the center column can independently react to an applied

11  sheer stress . . . without depending on or impacting each other."  Stolte Decl., docket no.

12  197, Ex. G (Rebuttal Expert Report of Dr. Cook) at 19.  Another one of Esquel's experts,

13  Mr. Haddock, identified the horizontal segments of Esquel's bonding elements during his

14  deposition.  Taltech's Opp'n, docket no. 203, Appendix 1 (Haddock Dep. of June 28, 2006)

15  at 79:11-81:11.

16  To enable a comparison of Esquel's accused method and shirts to the claims, the

17  Court designates the upper and lower surfaces of Esquel's bonding elements as described in

18  the diagrams on page 14 of Taltech's motion, docket no. 198.  The Court limits its

19  designation of upper and lower surfaces of Esquel's bonding elements to the upper,

20  horizontal portions of the bonding elements.  The Court does not express any opinion as to

21  how the surfaces of the vertical portions of the bonding elements or the lower, horizontal

22  portions of the bonding elements should be designated because this additional bonding

---

[1] Esquel asks the Court to "designate[] the U-shaped tape's surfaces from the bottom upwards. . . ."  Esquel's Mot., docket no. 196, at 17:18.  In the Markman Order, the Court rejected Esquel's proposed convention for labeling the surfaces from the bottom of the seam construction and working upwards.  Markman Order at 10 n.2.  The Court declines to reconsider its ruling.  The Court also rejects Esquel's proposed "outer surface" and "inner surface" designations, as irrelevant to the claims.  See Esquel's Mot., docket no. 196, at 17.

ORDER  7−

material cannot be used to avoid infringement.[2] See Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 811 (Fed. Cir. 1999) ("[A claim using] the signal 'comprising' . . . is generally understood to signify that the claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited"); Phillips Petroleum Co. v. Huntsman Polymers Corp., 157 F.3d 866, 874 (Fed. Cir. 1998) ("The use of . . . 'which comprises' in the composition and process claims generally would mean that the claims require [the recited limitations], but that additional elements or process steps may be present."); Genentech, Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."). Even if this additional bonding material improves the patented invention by making the seam "stronger" and "less susceptible to puckering," as Dr. Cook has opined, see Stolte Decl., docket no. 197, Ex. G at 20, "an improvement upon a patented device does not necessarily avoid infringement." Stiftung, 945 F.2d at 1179. Accordingly, the Court rejects Esquel's "upper and lower surface" argument as a basis for summary judgment of non-infringement.

### 3. Folded/Folding . . . Such That

Third, Esquel argues that it does not infringe product claims 25 and 26 of the '779 Patent because Esquel's sleeves are not "folded such that" a portion of the lower[3] surface of the sleeve (i.e., the second garment component) abuts the lower surface of a bonding element. Claims 25 and 26 of the '779 Patent are dependent on independent claim 20 of the '779 Patent. Element (c) of claim 20 of the '779 Patent requires, in pertinent part, that a

---

[2] As a result, the diagram shown at the bottom of page 9 of Taltech's Opposition, docket no. 203, goes beyond the Court's ruling by assigning surface designations to the lower, horizontal portions of the bonding elements.

[3] Esquel mistakenly stated "upper" in its motion, in the heading and topic sentence on page 19.

ORDER  8–

second garment component is "folded such that a portion of said lower surface of the second garment component is bonded to the lower surface of the bonding element . . . ." '779 Patent at 8:19-21.

Similarly, Esquel argues that it does not infringe method claim 18 of the '779 Patent because the folding that occurs in Esquel's seam manufacturing process does not create the abutment required by independent claim 1 of the '779 Patent, on which claim 18 depends. Step (e) of claim 1 of the '779 Patent requires "folding a portion of the second garment component such that a lower surface of the second garment component abuts the lower surface of the bonding element." '779 Patent at 6:43-45.

In the Markman Order, the Court construed "folding . . . such that" to mean "folding, which creates or results in the relationship described following 'such that'." Markman Order at 41. The Court was not asked by the parties to construe "folded . . . such that." Contrary to the position taken in Taltech's summary judgment briefs, Taltech agreed with Esquel's position at oral argument that "folded . . . such that" should be construed the same as "folding . . . such that." The Court thus adopts the same construction for both terms.

Esquel contends that no portion of the second garment component is ever folded to create the requisite abutment between the lower surface of the second garment component and the lower surface of the bonding element. Stolte Decl., docket no. 197, Ex. F (Haddock Rebuttal Rep.) at 15 (". . . the abutment . . . between the sleeve fabric and the U-shaped tape is created at the beginning of the Esquel process when the sleeve fabric is flat," not as a result of the folding of the sleeve fabric [i.e., the second garment component]). In response, Taltech submits an expert opinion that: "The fold created by the folder [of the second garment component] results in the lower surface of the second garment component (sleeve) abutting the lower surface of the bonding element." Taltech's Opp'n, docket no. 203, Appendix 2 (Nienke Decl.) ¶ 12. Taltech has raised a genuine issue of material fact as to whether Esquel's method literally infringes (i.e., whether it contains the "folding . . . such

ORDER 9–

that" and "folded . . . such that" limitations of claims 1 and 20 of the '779 Patent, respectively).

Taltech further argues that it could prove step (e) of claim 1 of the '779 Patent under the doctrine of equivalents, and Taltech has submitted the expert opinion of Mr. Jack L. Nienke in support of this argument. Taltech's Opp'n, docket no. 203, Appendix 2 (Nienke Decl.) ¶¶ 13-15. Esquel's expert has rebutted Mr. Nienke's doctrine of equivalents argument. Stolte Decl., docket no. 197, Ex. F (Haddock Rebuttal Rep.) at 16-18. There are genuine issues of material fact precluding summary judgment under the doctrine of equivalents.

Due to the genuine issues of material fact, the Court rejects Esquel's "folded/folding . . . such that" argument as a basis for summary judgment of non-infringement.

**4.   Abuts**

Fourth, Esquel argues that it does not infringe product claim 29 of the '615 Patent and product claims 25 and 26 of the '779 Patent because the surfaces of the front and back panel do not abut along the seam. Claim 29 of the '615 Patent is dependent on independent claim 19 of the '615 Patent, and claims 25 and 26 of the '779 Patent are dependent on independent claim 20 of the '779 Patent. Elements (c) and (d) of claim 19 of the '615 Patent and of claim 20 of the '779 Patent require that a portion of the upper surface of the second garment component abuts a portion of the lower surface of the first garment component.

The Court construed "abuts" to mean "touching (i.e., having direct contact)." Markman Order at 19. In Esquel's seam, a bonding element is present between the garment components. Taltech argues that despite the presence of the bonding element between the garment components, it could prove that the necessary abutment occurs. Taltech's expert, Dr. David M. Hall, has testified that direct contact constituting abutment occurs in two areas and that he has personally seen such direct contact using a scanning electron microscope ("SEM"). Taltech's Opp'n, docket no. 203, Appendix 3 (Hall Decl.) ¶¶ 13-25, Exs. 3-4.

ORDER 10–

Taltech's submission of the SEM evidence is an attempt to alter the Court's construction of "abuts" to mean "touching, i.e., having direct contact, as viewed under a scanning electron microscope."  Because persons having ordinary skill in the art of garment manufacture do not use scanning electron microscopes, the Court will not construe abuts in this manner. Taltech's expert, Dr. Hall, admits that persons having ordinary skill in the art of garment manufacture do not use scanning electron microscopes.  In his deposition, Dr. Hall testified as follows:

> Q:  Would [a person of ordinary skill in the art] have been taught how to use a scanning electron microscope?
>
> A:  No.
>
> Q:  Would he know how to use one?
>
> A:  No.

Esquel's Reply, docket no. 202, Ex. I (Hall Dep.) at 29:15-30:11.

Furthermore, in the Markman Order, the Court expressly rejected Taltech's proposition that surfaces of garment components separated by a bonding element "abut." See, e.g., Markman Order at 16 ("The surfaces of garment components cannot 'abut' if there is a bonding element in between them."); id. at 17 ("The only time that the claims clearly describe one garment component abutting another is when there is no bonding element between them."); id. at 18 (". . . the specifications also support Esquel's proposed construction that 'abuts' does not signify a relationship between the surfaces of two garment components with a bonding element in between them.").

Taltech also asserts that the garment components abut in the dark orange area depicted in Exhibit 3 to the Hall Declaration.  Taltech's Opp'n, docket no. 203, Appendix 3 (Hall Decl.) at Ex. 3.  That abutment is irrelevant because it does not meet the claim requirement for abutment along the seam, in light of the Court's construction of seam to mean "the place where at least two pieces of fabric are joined by at least two rows of stitches."  Markman

ORDER 11–

Order at 28. The dark orange area shown in Exhibit 3 to the Hall Declaration is outside the seam. Abutment outside the seam does not satisfy the claim limitation.

No reasonable factfinder could conclude that the necessary abutment occurs in Esquel's seams. Thus, as a matter of law, the Court concludes that Esquel's seams do not literally infringe claim 29 of the '615 Patent and claims 25 and 26 of the '779 Patent.

Esquel also moves for summary judgment on the grounds that the doctrine of equivalents cannot apply if it would read the abutting limitation out of the claim. See Warner-Jenkinson, 520 U.S. at 29 ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."). Taltech's expert opines that "the difference between the two fabric surfaces directly contacting each other and having intervening tape material between those fabric surfaces is not substantial so that there would be infringement under the doctrine of equivalents." Taltech's Opp'n, docket no. 203, Appendix 2 (Nienke Decl.) ¶ 17. He explains why he believes the differences are not substantial. See id. This opinion is sufficient to overcome Esquel's motion for summary judgment on the doctrine of equivalents issue. As previously noted, Taltech may rely on the "insubstantial differences" test to demonstrate equivalence. See Warner-Jenkinson, 520 U.S. at 39-40.

Accordingly, the Court GRANTED IN PART and DENIED IN PART Esquel's motion for summary judgment. The motion was granted on the abutment issue as follows. As a matter of law, Esquel does not literally infringe claim 29 of the '615 Patent or claims 25 and 26 of the '779 Patent because Esquel's seams do not contain the necessary abutment between garment components required by these claims. The motion was denied as follows. Whether there is infringement of these claims under the doctrine of equivalents remains to be determined at trial.

//

ORDER 12–

### 5. Yoke

Fifth, Esquel argues that it does not infringe any of the asserted claims because "[i]n the yoke portion of a significant portion of Esquel's wrinkle free shirts, there is no lower surface of a bonding element that abuts the upper surface of the yoke and no set stitch that traverses the sleeve, the yoke and a bonding element." Esquel's Mot., docket no. 196, at 25. These relationships are required to exist at (or sometimes "along") the seam by steps (c) and (d) of claim 1 of the '615 Patent, elements (b) and (d) of claim 19 of the '615 Patent, steps (b) and (c) of claim 1 of the '779 Patent, and elements (b) and (d) of claim 20 of the '779 Patent. Esquel does not move for summary judgment of non-infringement on this "yoke" basis as to the 24,489 shirts that it admits were manufactured with a bonding element affixed to the armhole edge of the yoke. Esquel's Reply, docket no. 209, at 13 n.5. As a result, this section of the Order only applies to Esquel's shirts manufactured without a bonding element affixed to the armhole edge of the yoke.

Taltech does not dispute that the claimed relationships do not exist at the seam where the yoke and the sleeve are joined by stitches. Instead, Taltech argues that the Court's construction of "seam" does not describe the length of the seam or whether the seam must correspond to the entire circumference of a shirt armhole. This is true. The Court construed "seam" to mean "the place where at least two pieces of fabric are joined by at least two rows of stitches." Markman Order at 28. "Along the seam" thus simply means "along the place where at least two pieces of fabric are joined by at least two rows of stitches," and nothing more. The "two pieces of fabric" joined in the patents-in-suit include a first garment component and second garment component. The Court construed "garment component" to mean "a structural part of a garment, such as a front panel, yoke, rear panel, and sleeve." Markman Order at 22. Thus, even if the claimed relationships do not exist at the seam where a yoke and a sleeve are joined, Esquel's method of manufacturing armhole seams and shirts may infringe the patents-in-suit because the claimed relationships may exist at the seam

ORDER 13–

where a front panel and a sleeve are joined, and/or at the seam where a rear panel and a sleeve are joined.  Accordingly, the Court rejects this "yoke" argument as a basis for summary judgment of non-infringement as to claims 11 and 12 of the '615 Patent and claims 18 and 26 of the '779 Patent.

In contrast to claims 11 and 12 of the '615 Patent and claims 18 and 26 of the '779 Patent, which are not limited to any particular type of seam, the "seam" in claims 14 and 29 of the '615 Patent and claim 25 of the '779 Patent is limited to "a dress shirt armhole" seam. The Court must decide whether "a dress shirt armhole" seam encompasses the entire circumference of the armhole or whether it could mean just part of the circumference of the armhole. Taltech's expert, Mr. Nienke, has opined that the shape of a dress shirt armhole seam is "circular:"

> Pucker at the armhole seam of a dress shirt is of particular concern, because the armhole seam is a highly visible part of a dress shirt. The shape of the armhole seam makes it especially difficult to control pucker. <u>An armhole seam is circular</u>, and, to make an armhole seam, it is necessary to join two pieces of garment material that are curved in opposite directions.

Stolte Decl., docket no. 202, Ex. E (Nienke Expert Report) at 9 (emphasis added). In a subsequent deposition, Mr. Nienke explains that "[t]he shape of the armhole seam is circular;" that "you join the sleeve to the body" to make an armhole seam; and that "the shape of the armhole seam once closed at the side seam is circular shape." Taltech's Reply, docket no. 211, Appendix 11 at 45:7-49:17. There is no intrinsic or extrinsic evidence in the record that contradicts a conclusion that the seam of a dress shirt armhole is circular.

Taltech argues that the Court cannot conclude that a dress shirt armhole seam is circular because the doctrine of claim differentiation "create[s] a presumption that each claim in a patent has a different scope." See Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998). Claims 13 and 28 of the '615 Patent and claim 24 of the '779 Patent – which are not asserted by Taltech – require a seam "wherein said first garment component comprises a front panel, yoke, and rear panel of a dress shirt and said second

ORDER   14–

garment component comprises a shirt sleeve such that said seam is the seam of a shirt armhole." '615 Patent at 7:40-44 and 8:59-63; '779 Patent at 8:54-58.  As a result, "the seam of a dress shirt armhole" in claims 14 and 29 of the '615 Patent and claim 25 of the '779 Patent must mean something different than the seam described in claims 13 and 28 of the '615 Patent and claim 24 of the '779 Patent.  As discussed by Esquel, the specifications of the patents-in-suit state that the dress shirt body "usually" comprises a front panel, a yoke, and a rear panel; this leaves open the possibility that the dress shirt body may omit a yoke or be composed of a single piece of fabric.  Esquel's Reply, docket no. 209, at 15 (citing '779 Patent at 3:25-36); see also '615 Patent at 3:35-36.  Because a shirt body does not necessarily consist of a front panel, a yoke, and a rear panel, the doctrine of claim differentiation does not preclude a conclusion that the "seam of a dress shirt armhole" referred to in the asserted claims is circular.

The Court concludes that "the seam of a dress shirt armhole" is circular.  As a result, Taltech cannot prove literal infringement of claims 14 and 29 of the '615 Patent and claim 25 of the '779 Patent because the claimed relationships do not exist in the yoke portion of Esquel's dress shirt armhole seam.  Although Taltech argues that "Esquel has not shown that Taltech would be unable to prove infringement under the doctrine of equivalents," Taltech's Opp'n, docket no. 203, at 21, Taltech has failed to submit any evidence to raise a genuine issue of material fact regarding non-infringement under the doctrine of equivalents.  See PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005) ("[C]onclusory statements regarding equivalence . . . do not raise any genuine issues of material fact.").  Accordingly, the Court GRANTED Esquel's motion for summary judgment of non-infringement as to claims 14 and 29 of the '615 Patent and claim 25 of the '779 Patent.  However, this part of the Order only applies to Esquel's shirts manufactured without a bonding element affixed to the armhole edge of the yoke.  Whether the 24,489 shirts that were manufactured by Esquel with a bonding element affixed to the armhole edge of the

yoke infringed claims 14 and 29 of the '615 Patent and claim 25 of the '779 Patent remains to be determined at trial, assuming Taltech continues to pursue this claim at trial in light of its waiver of its claim for past damages. See Taltech's Statement With Respect to Damages, docket no. 218.

**F.     Conclusion**

The Court GRANTED IN PART and DENIED IN PART Esquel's motion for summary judgment of non-infringement. Esquel's motion was GRANTED as follows. As a matter of law, Esquel does not literally infringe claim 29 of the '615 Patent or claims 25 and 26 of the '779 Patent because Esquel's seams do not contain the necessary abutment between garment components required by these claims. As a matter of law, Esquel does not infringe, either literally or under the doctrine of equivalents, claims 14 and 29 of the '615 Patent and claim 25 of the '779 Patent because the claimed relationships do not exist in the yoke portion of Esquel's dress shirt armhole seam, in all but 24,489 shirts manufactured by Esquel. In all other respects, Esquel's motion was DENIED.

IT IS SO ORDERED.

DATED this 15th day of September, 2006.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER   16–