NOTE: This disposition i  07-CV-01506-MAN

# United States Court of Appeals for the Federal Circuit

2007-1506

TALTECH LIMITED
and TAL APPAREL LIMITED,

Plaintiffs-Appellants,

v.

ESQUEL APPAREL, INC.
and ESQUEL ENTERPRISES LIMITED,

Defendants-Appellees.

Appeal from the United States District Court for the Western District of Washington in case no. 04-CV-974, Senior Judge Thomas S. Zilly.

DECIDED: May 22, 2008

Before MAYER, BRYSON and GAJARSA, Circuit Judges.

PER CURIAM.

TALtech Limited and TAL Apparel Limited ("TAL") appeal the judgment of the Western District of Washington that TAL committed inequitable conduct in the prosecution of U.S. Patent No. 5,568,779 ('779 Patent) and that this was an exceptional case under 35 U.S.C. § 285 warranting the award of attorney's fees and costs, that claim 18 of the '779 Patent is invalid for failure to disclose the best mode, and that

Esquel Apparel, Inc. and Esquel Enterprises Limited ("Esquel") did not infringe claims 18, 25, and 26 of the '779 Patent. TALtech Ltd. V. Esquel Apparel, Inc., No. 2:04-CV-00974 (W.D. Wash. July 13, 2007). Because the district court did not determine whether disclosed prior art was merely cumulative to withheld prior art, we vacate the finding of inequitable conduct and exceptional case and remand. We affirm the invalidity of claim 18, and the finding of non-infringement of claims 18, 25 and 26. Each party will bear its own costs.

I.

John Wong invented a new seam for "wash-and-wear" dress shirts that solved the problem of puckering when laundered. After seeing a seam employing heat-fusible adhesive tapes on a raincoat produced by his employer, Hong-Kong-based TAL Apparel, Wong was inspired to try a similar seam in dress shirts. He obtained various sample adhesive tapes from Vilene and tried them in his seam. After many trials with the various adhesives, he eventually settled on a preference for Vilene SL33 and produced a shirt that did not pucker appreciably after a standard set of washings. Shirts produced with this seam became successful, and on May 17, 1994, Wong filed an application for patent protection for his invention.

After the initial filing but before its first office action, Wong filed an information disclosure statement with the PTO, including another TAL produced raincoat seam incorporating bonding elements and a published German application of Felix Robers that produced a seam similar to the inspirational raincoat seam. He did not however present the seam from this original raincoat to the PTO at any time. Additionally, he

never disclosed his then preference for Vilene SL33 as the preferred adhesive. On October 29, 1996, the '779 Patent issued and was later assigned to TALtech.

Esquel is a competing manufacturer, also based in Hong Kong. In 2001, aware of the '779 Patent, Esquel decided to produce pucker-free wash-and-wear shirts using adhesive in the seams. It purchased adhesives from Bemis, another supplier of adhesive tapes, and subsequently received U.S. Patent No. 7,013,818 for their seam. On April 29, 2004, Esquel sought a declaratory judgment of non-infringement and invalidity of the '779 Patent in the Western District of Washington. The next day, TALtech sued Esquel for infringement of their '779 Patent in the Eastern District of Texas. The two suits were consolidated in the Western District of Washington. In response to an order to reduce the number of asserted claims, TALtech asserted claims 18, 25, and 26, and certain claims of U.S. Patent No. 5,590,615, a continuation of the '779 Patent, not at issue in this appeal.

Claim 18 is a method claim dependent on independent claim 1 and dependent claim 17, reciting the steps to creating the garment seam including the adhesive bonding element, a "set" stitch, and a "top" stitch. Claim 17 adds an additional set stitch. Claim 18 adds that step (e) must occur before step (c). Claims 25 and 26 both depend from product claim 20, which describes the finished seam. Claim 25 adds that the seam is a "seam of a dress shirt armhole", while claim 26 adds the additional stitch of claim 17.

Esquel's accused seam employs two adhesive tape components, each of which is formed into a U-shape with one component affixed around the armhole edge of a sleeve, and the other component affixed around the armhole edge of the shirt body

panels. The folding of a portion of a sleeve occurs prior to the placing of the body panel adjacent to the sleeve, thereby positioning the U-shaped tape along the seam. In the resulting seam, the U-shaped adhesive comes between the two garment components, being mated, with the lower surface of the bonding element directly contacting the upper surface of the body panel occurring at the time the tape is sewn to the armhole edge of the body panel.

The district court construed thirteen terms of the patents-in-suit, and in summary judgment found claims 25 and 26 not literally infringed, and claim 25 not infringed under the doctrine of equivalents. The court then held a bench trial and on March 9, 2007, entered findings of fact and conclusions of law finding the '779 Patent neither anticipated nor obvious in view of the prior art. However, the court found that claim 18 was invalid because Wong had not disclosed the best mode in the use of Vilene SL33. And it found that Wong had committed inequitable conduct during the prosecution of the '779 Patent for failing to disclose the inspirational raincoat seam, and that the case was exceptional under 35 U.S.C. § 285 in part because of the inequitable conduct. It awarded attorneys fees to Esquel. Finally, the court concluded that Esquel's seams did not infringe claim 18.

II.

To support a finding of inequitable conduct, there must be clear and convincing evidence that the applicant made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, intending to deceive the PTO. Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363 (Fed. Cir. 2007). Information is material if there is a substantial likelihood that a reasonable

examiner would have considered the information important in deciding whether to allow the application to issue as a patent. Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 1000 (Fed. Cir. 2007).

In this case, the district court found TAL liable for inequitable conduct because inventor John Wong had not disclosed the raincoat seam that inspired his invention to the PTO. However, an inventor is not required to disclose the object or article that inspired his invention, only material that a reasonable examiner would have considered important. If the material is cumulative to other disclosed material, as a matter of law, the inventor is not obligated to disclose it. TAL argues that the undisclosed raincoat seam was merely cumulative to the German application of Robers, which was disclosed in the initial filing. Esquel argues that this argument was not raised below. Because TAL raised the issue in both its pretrial motion for summary judgment and in the proposed findings of fact and conclusions of law, this issue was preserved for appeal. If the undisclosed raincoat seam was merely cumulative to Robers, then no inequitable conduct lies in its nondisclosure.

Esquel also argues that TAL has misled this court by not presenting the entire sequence of Robers' method to compare against the sequence as described by the '779 Patent. It argues that when the entire sequence is compared, it is clear that the Robers sequence is a distinctly different method from the method of the '779 Patent. Be that as it may, the similarity of the two methods is a matter of fact which we can not discern from the record. Therefore, we vacate the determination of inequitable conduct and remand the case to the district court to determine whether Robers was, as TAL suggests, merely cumulative to the undisclosed raincoat seam, thus negating

inequitable conduct. We also vacate the order of attorney fees under 35 U.S.C. § 285 because the district court based its conclusion that this was an exceptional case at least in part upon its finding of inequitable conduct.

### III.

The district court found claim 18 invalid because the inventor failed to satisfy the best mode requirement of 35 U.S.C. § 112 by not disclosing in the specification the preferred use of Vilene SL33 as the adhesive when he knew it at the time of filing. We have set out a two-pronged test for determining whether an inventor has met the best mode requirement. "First, the factfinder must determine whether, at the time of filing the application, the inventor possessed a best mode for practicing the invention." Eli Lilly and Co. v. Barr Labs., Inc., 251 F.3d 955, 963 (Fed. Cir. 2001) (citing Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 927-28 (Fed. Cir. 1990)). This involves a subjective inquiry whereby the factfinder focuses on the inventor's state of mind at the time of filing. Id. "Second, if the inventor possessed a best mode, the factfinder must determine whether the written description disclosed the best mode such that one reasonably skilled in the art could practice it." Id. This involves an objective inquiry focused on the scope of the claimed invention and the level of skill in the art. Id.

Because whether an inventor has met the best mode requirement is a matter of fact, we review the decision of the district court for clear error. The district court examined the inventor and found that at the time of filing, he believed that the bonding element formed an integral part of the present invention. The court also found that after experimenting with other adhesives, he settled on using Vilene SL33, and contemplated only using Vilene SL33 as the bonding element. It found that this was the compound he

had determined worked best at the time of his application because it was the only compound he contemplated using in his invention. TAL argues that there is no best mode, and that the invention requires simply "a quantity of adhesive sufficient to flow over the garment surfaces as described" and that various commercially available fusible adhesives will work. However, because the inventor experimented with many adhesives but settled on a preference for one, we find no clear error in the district court's determination that the inventor possessed a best mode at the time of filing.

In satisfaction of the second prong, the district court found that the written description failed to disclose the use of Vilene SL33 as the bonding element. TAL responds that there was no evidence that the Vilene products offered better qualities than other brands, and that the PTO prefers the use of generic names of products. This, however, is not the proper inquiry. The district court correctly determined that the best mode found when analyzing the first prong was not present in the written description. TAL has not explained how the written description teaches one having reasonable skill in the art the way to practice the best mode as found in the analysis of the first prong – the use of Vilene SL33. There is no clear error in the district court's finding that the written description did not include the best mode as found in the first prong.

IV.

Even if claim 18 were not invalid for failing to satisfy the best mode requirement, we agree with the district court that Esquel has not infringed it. Claim 18 of the '779 Patent is a method claim depending on claim 1, adding a requirement that step (e) of claim 1 is performed before step (c). Generally, there is no presumption of order, and

so a claim with many steps can be infringed by an accused process performing the claimed steps in any order. However, we will find that the claim requires an ordering of steps when the claim language, as a matter of logic or grammar, requires that the steps be performed in the order written, or the specification directly or implicitly requires such a narrow construction. Altiris, Inc. v. Symantec Corp., 318 F.3d 1363, 1369-70 (Fed. Cir. 2003) (citing Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1343 (Fed. Cir. 2001)). As the district court found, claim 18 is one such claim. The district court found that steps (d) and (e) of claim 18 must be performed after step (b). These relevant steps of claim 18 are as follows:

> (b) placing a bonding element having at least a thermal adhesive component along the seam such that a lower surface of the bonding element abuts an upper surface of the first garment component;
> . . .
> (d) folding the first garment component over the bonding element such that the upper surface of the first garment component is folded over and abuts an upper surface of the bonding element;
> (e) folding a portion of the second garment component such that a lower surface of the second garment component abuts the lower surface of the bonding element

The logic and grammar of the claim make the requirement of an order clear. We agree with the district court that step (e) requires the presence of the bonding element because, in order to fold a portion of the second garment component such that its lower surface <u>abuts</u> the lower surface of the bonding element as required by step (e), the bonding element must already be in place, for it is placed in step (b). We therefore affirm the district court's construction. The district court found that Esquel's method practices neither the "placing" limitation of step (b), nor the "folding" limitation of step (e). TAL has not challenged these factual findings on appeal.

V.

TAL also asserts that the district court misconstrued claims 25 and 26, and that this resulted in a finding of non-infringement; specifically, that the term "abuts" requires touching and having direct contact. It argues that neither the specification nor a dictionary definition requires touching when two objects "abut," but that the definition of abuts includes, but does not require, touching or direct contact. But the specification, the drawings, and the language of claims 18, 25, and 26 compel the conclusion that in this context "abuts" means "touching."

In every instance of the word, "abuts" describes two surfaces that are in direct contact with each other. The specification, drawings and claims all state that the lower surface of the first garment component is touching the upper surface of the second garment component with direct contact. They also all state that in the completed seam, the bonding element is touching both the upper surface of the first garment component and the lower surface of the second garment component with direct contact. In other words, the bonding element <u>abuts</u> both the first garment component and the second garment component. This intrinsic evidence supports the conclusion that "abuts" carries its ordinary meaning of touching.

We reject TAL's argument that "abuts" contemplates an intervening adhesive between abutting elements. In support, it points to the specification which reads: "Preferably, the bonding element 32 comprises an adhesive web which flows during ironing onto the **abutting surfaces of the garment components** to create a very strong bond between the garment components along the garment seam 12." '779 Patent at col. 6, ll. 1-5 (emphasis supplied by TAL.) Upon inspection, the abutting

2007-1506                                    9

surfaces described in the excerpt are those surfaces of the bonding element that directly touch the upper surface of the first garment component and the lower surface of the second garment component. They are not, as TAL suggests, the abutting lower surface of the first garment component and upper surface of the second garment component.

In fact, as Esquel correctly points out, the only time the patent directly describes a garment component abutting another garment component, the two components touch without an intervening element: "a portion of said upper surface of the second garment component abuts a lower surface of the first garment component along the seam." '779 Patent at col. 8, ll. 19-24. The drawings are consistent with this language. The adhesive is not flowing between the two garment components, leaving their direct contact intact. We affirm the construction of the district court.

Turning to infringement, we again agree with the district court that Esquel's seam does not literally infringe claims 25 and 26 as construed, because Esquel places a bonding element between the first and second garment components, thus avoiding the abuts limitation. The Esquel seam under this construction also cannot infringe claim 25 under the doctrine of equivalents because to do so would read the abutting limitation out of the claim. Therefore, there is no infringement.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By_____ Date:_____

# United States Court of Appeals for the Federal Circuit

2007-1506

TALTECH LIMITED
and TAL APPAREL LIMITED,

Plaintiffs-Appellants,

v.

ESQUEL APPAREL, INC.
and ESQUEL ENTERPRISES LIMITED,

Defendants-Appellees.

## Judgment

ON APPEAL from the    United States District Court for the
                     Western District of Washington

in CASE NO(S).       04-CV-974.

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**AFFIRMED-IN-PART, VACATED-IN-PART AND REMANDED**

ENTERED BY ORDER OF THE COURT

DATED  MAY 2 2 2008                    _Jan Horbaly_
                                        Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By: _____ Date: _____

**ISSUED AS A MANDATE:** JUL 0 7 2008

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1506

TALTECH LIMITED
and TAL APPAREL LIMITED,

Plaintiffs-Appellants,

v.

ESQUEL APPAREL, INC.
and ESQUEL ENTERPRISES LIMITED,

Defendants-Appellees.

William K. West, Jr., Howrey LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Pamela S. Kane and Jim W. Ko.

Thomas H. Shunk, Baker & Hostetler LLP, of Washington, DC, argued for defendants-appellees. With him on the brief were Gary J. Rinkerman and A. Neal Seth.

Appealed from: United States District Court for the Western District of Washington

Senior Judge Thomas S. Zilly

___ FILED
___ LODGED  
___ RECEIVED

JUL 1 0 2008

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY